MERCHANTS NATIONAL BANK OF MUNCIE, Administrator of the Estate of Joseph White, Deceased, Plaintiff,

v.

The NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Defendant.

No. IP 77–411–C.

United States District Court,
S. D. Indiana,
Indianapolis Division.

July 13, 1978.

Wilson, Tabor & Holland by Richard L. Norris, Indianapolis, Ind., Slagle & Shirey by Wayne A. Shirey, Muncie, Ind., for plaintiff.

Baker & Daniels by Norman P. Rowe, Indianapolis, Ind., for defendant.

### OPINION

HOLDER, District Judge.

This action comes before the Court upon the motion of Northwestern Mutual Life Insurance Company for summary judgment.

By this action, plaintiff seeks to recover accidental death benefits under seven life insurance policies issued by Northwestern Mutual Life Insurance Company on the life of Joseph B. White. The policies are identified by the following numbers: No. 5 607 333; No. 6 036 455; No. 6 132 407; No. 6 306 778; No. 6 378 426; No. 6 474 568; and No. 6 667 148. Joseph B. White was a qualified private pilot who died in the crash of a Piper PA–28–235 aircraft at Detroit City Airport on June 26, 1975.

Northwestern Mutual Life Insurance Company has paid to the beneficiaries the basic coverage under the various policies in the aggregate amount of $60,131.95, but has not paid any claim for accidental death benefits.

The flight to Detroit originated from Toronto, Ontario, Canada, and a flight plan was filed on June 26, 1975, describing the proposed flight and listing Mr. White as the pilot. Estimated arrival time in Detroit was stated to be 1:55 P.M. that same date. At 1:46 P.M. when the aircraft was within a mile and one-half of the Detroit Airport, radio communication was established between the Piper PA–28–235 and the Detroit Control Tower. During the two-way radio conversation, which lasted until 1:50 P.M. the Detroit Controller cleared the aircraft for landing, Mr. White then requested a clearance for a go around which the Controller granted, the Controller again cleared the aircraft for landing, Mr. White again requested clearance for another go around which the Controller granted and the Controller then requested confirmation of the aircraft's altimeter setting which Mr. White did. All transmissions from the aircraft during this time were by Mr. White.

Under policy No. 5 607 333 accidental death benefits are not payable if the death of the insured resulted from:

"(b) Riding in or descent from any kind of aircraft, if the Insured participated in training or had any duties whatsoever aboard such aircraft or if such aircraft was operated by or for the armed forces."

Under the other six policies accidental death benefits are not payable if the death of the insured resulted from:

"(b) Riding in any kind of aircraft, unless the insured was riding solely as a passenger in an aircraft not operated by or for the Armed Forces, or descent from any kind of aircraft while in flight. An Insured who had any duties whatsoever at any time on the flight or any leg of the flight with respect to any purpose of the flight or to the aircraft or who was participating in training shall not be considered a passenger."

Mr. White, by filing a flight plan with himself listed as pilot, by establishing radio contact with the control tower, by obtaining landing and go around clearances and by confirming the aircraft's altimeter setting, was not riding solely as a passenger but had and was performing duties with respect both to a purpose of the flight and to the aircraft.

The Court has jurisdiction over the parties and subject matter.

Under 14 C.F.R. § 91.84 (1975), a flight plan was required to be filed when flying

from Canada into the United States. Under 14 C.F.R. § 91.83(a)(3) (1975), the flight plan had to include the name of the pilot in command. Compliance with each of these regulations constitutes a duty with respect to the flight and the aircraft. The filing of a flight plan at Toronto disclosing Mr. White as the pilot fulfilled such duties. "Pilot in command" did not refer exclusively to the individual actually controlling the aircraft. As defined in 14 C.F.R. § 1.1 (1975), pilot in command was the person responsible for the operation and safety of the aircraft. Mr. White, as the designated pilot in command, had the duty to insure the safe and proper operation of the aircraft even if he did not actually operate the controls of the aircraft. Under 14 C.F.R. § 91.87(b) (1975), two-way radio communication was required to be maintained between the aircraft and the Detroit Control Tower. Compliance with this regulation constitutes a duty with respect to the flight and the aircraft. Mr. White's radio communication wherein he sought and obtained landing and go around clearances and confirmation of the aircraft's altimeter setting was a fulfillment of such duty. His confirmation of the altimeter setting was also the fulfillment of another such duty under 14 C.F.R. § 91.81 (1975), to maintain proper settings.

The language of the insurance policies is not ambiguous, excluding coverage of persons with "any duties whatsoever." The language in the insurance policies involved in the cases cited by plaintiff is different, more restrictive, and not on point in this action. There is a genuine issue as to who was actually operating the controls of the aircraft (other than the radio) at the time of the crash, but such issue is not material. In filing the flight plan as above described and in maintaining radio communication with the Tower, requesting and receiving instructions from the Tower, and confirming the altimeter setting, Mr. White had and was performing duties and was not riding solely as a passenger within the meaning of the insurance policies. The language of the Kendall affidavit, offered by plaintiff to the contrary, is an unqualified opinion, is conclusory and is insufficient to put this matter in issue. The activities of Mr. White separately and severally constitute as a matter of law acts which invoke the application of both policy exclusions, i. e., Mr. White was not riding solely as a passenger and he had and did perform duties. There exists herein no genuine issue as to any material fact, and defendant is entitled to judgment as a matter of law.

Defendant's motion for summary judgment is GRANTED.

It is adjudged that judgment is entered for the defendant and against the plaintiff, that plaintiff take nothing by its amended complaint and that the costs of this action are assessed against the plaintiff.